UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DUFFY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, ENCOMPASS HOME AND AUTO INSURANCE COMPANY, and NATIONAL GENERAL INSURANCE COMPANY,<br><br>Defendants. | Case No. 26-cv-6563<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Michael Duffy, individually and on behalf of all others similarly situated, brings this class action complaint against Defendants Allstate Insurance Company, Encompass Home and Auto Insurance Company, and National General Insurance Company ("Defendants"), alleging upon information and belief:

## INTRODUCTION

1. Plaintiff Michael Duffy ("Duffy") brings this class action under Rule 23 of the Federal Rules of Civil Procedure against Defendants Allstate Insurance Company ("Allstate Insurance") Encompass Home and Auto Insurance Company ("Encompass"), and National General Insurance Company ("National General"), for their joint and systematic practice of improperly calculating first-party benefits under Insurance Law § 5102 of New York's Comprehensive Automobile Insurance Reparations Act (the "No-Fault Statute").

2. New York's No-Fault Statute contains two distinct elements: one for coverage and one for benefits. Section 5102(a) defines "basic economic loss"—the coverage an insurer

must provide—as up to $50,000 for medical expenses, lost wages, and other expenses. For wages, § 5102(a)(2) caps the lost-earnings component of basic economic loss at "two thousand dollars per month." That is the maximum amount the insurer may charge against the $50,000 policy limit for lost wages in any given month.

3. Section 5102(b) separately defines "first party benefits"—the payment the insurer actually makes—as "payments to reimburse a person for basic economic loss" less certain deductions, including "[t]wenty percent of lost earnings." The 20% deduction lives exclusively in § 5102(b). It reduces the insurer's payment obligation; it does not increase the amount of coverage consumed under § 5102(a).

4. Defendants conflate coverage and benefits. They take an item from § 5102(b)—the 20% deduction—and apply it to inflate the amount charged against coverage under § 5102(a) beyond the express statutory $2,000 cap.

5. Under Defendants' standardized wage-loss worksheet (the "Allstate Worksheet"), Defendants correctly apply the 20% offset and other deductions to compute the insured's monthly payment. But Defendants then credit the larger, pre-offset wage figure against the insured's $50,000 basic-economic-loss limit, rather than the $2,000 statutory maximum.

6. The No-Fault Statute does not permit Defendants to benefit twice: once by limiting the insured's wage benefits to $2,000 per month and again by charging more than that amount against the insured's coverage limit.

7. Defendants' adjusters apply the Allstate Worksheet to every wage claim they process, including claims submitted by Brown following a motor vehicle accident in April 2019.

8. The result is premature coverage exhaustion. For insureds who earn more than $2,000 per month, Defendants' methodology burns through the $50,000 coverage limit faster

than the statute allows, depriving the insured of benefits before he or she has received the full $50,000 in coverage promised by the policy and mandated by law.

9. At least four judges have already held that Defendants' exact methodology violates the No-Fault Statute and breaches the insurance contract as a matter of law. *See Pryce v. Progressive Corp.*, No. 19-cv-1467, 2019 U.S. Dist. LEXIS 228789 (E.D.N.Y. Nov. 15, 2019); *Pryce v. Progressive Corp.*, 765 F. Supp. 3d 219 (E.D.N.Y. 2025); *Lanzillotta v. GEICO Emples. Ins. Co.*, No. 19-cv-1465, 2020 U.S. Dist. LEXIS 183536 (E.D.N.Y. Sept. 30, 2020); *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-224, 2021 U.S. Dist. LEXIS 232066 (S.D.N.Y. Dec. 2, 2021).

10. The New York Court of Appeals resolved this issue in *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451 (1980), holding that the $2,000 figure "represents the outer limit of recovery set down by the Legislature." *Id.* at 458. The Court explicitly ruled that "the 20% deduction should not be treated as taking away what [§ 5102(a)] bestows." *Id.* at 457.

11. Defendants' formula does precisely what *Kurcsics* forbids: it uses the 20% deduction to expand coverage consumption beyond the express statutory cap.

## PARTIES

12. Plaintiff Michael Duffy is a resident of Monroe County, New York.

13. Defendant Allstate Insurance Company is a corporation organized and existing in a state other than the State of New York, with its principal place of business at 2775 Sanders Road, Northbrook, Illinois 60062.

14. Defendant Encompass Home and Auto Insurance Company ("Encompass") is a corporation organized and existing in a state other than the State of New York, with its principal place of business at 2775 Sanders Road, Northbrook, Illinois 60062. Encompass is authorized and licensed to issue insurance policies in the State of New York.

15. Defendant National General Insurance Company ("National General") is a corporation organized and existing in a state other than the State of New York, with its principal place of business at 2775 Sanders Road, Northbrook, Illinois 60062. National General is an Allstate company and serves as claims administrator for Encompass. National General is authorized and licensed to conduct insurance business in the State of New York.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a State different from Defendants.

17. The Court has personal jurisdiction over each Defendant because they transact business in New York, are authorized and licensed to issue motor vehicle insurance policies or administer insurance claims in New York, advertise and sell auto insurance to consumers in New York, and Plaintiff's and the class members' causes of action arose as a direct result of such business transaction.

18. Venue is proper in this Southern District of New York pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to plaintiffs' and the class members' claims occurred in this district and at least one of the defendants maintains an office in this district.

## FACTUAL ALLEGATIONS

19. On or about November 8, 2022, Duffy was injured as a bicyclist when he was struck by a vehicle operated by third-party Gerleen Beaty.

20. Duffy was covered under two automobile policies for the accident, including: (1) a policy issued and administered by Allstate Insurance to Gerleen Beaty under policy number

000013645364 (the "Beaty Policy"); and (2) a policy issued by Encompass to Duffy under policy number 0283014697 (the "Duffy Policy"), which National General and Allstate Insurance administered.

21. When Duffy's accident occurred, his monthly wages exceeded $5,000.

22. After the accident, Duffy applied for first-party benefits under the Beaty Policy.

23. Allstate Insurance assigned Duffy's application claim number 0692063837.

24. The No-Fault Statute required the Beaty Policy to provide up to $50,000 in first-party benefits.

25. The Beaty Policy also had Optional Basic Economic Loss coverage up to $25,000.

26. Adjusters for Allstate Insurance adjusted Duffy's claims for first-party benefits using the Allstate Worksheet.

27. Applying the Allstate Worksheet, Allstate Insurance paid $62,787.94 in first-party benefits under the Beaty Policy, including $14,323.94 in medical benefits under § 5102(a)(1) and $48,464.00 in wage benefits under § 5102(a)(2), reflecting wage-loss payments capped at $2,000 per month from the date of the accident through Duffy's final wage payment on December 26, 2024.

28. Thereafter, Allstate Insurance denied additional claims on the wrongful basis that Duffy's $50,000 in Basic Economic Loss coverage and $25,000 in Optional Basic Economic Loss coverage was exhausted.

29. When Allstate Insurance deemed Duffy's coverage under the Beaty Policy exhausted, he remained entitled to approximately $12,212.06 in additional first-party benefits under § 5102.

30. The Allstate Worksheet's unlawful methodology, and not any true exhaustion of coverage, prematurely cut off Duffy's benefits under the Beaty Policy.

31. At the same time, the Duffy Policy was supposed to provide Additional PIP Benefits ("APIP") up to $100,000.

32. After the accident, Duffy applied for APIP benefits under the Duffy Policy.

33. National General and Allstate Insurance, as Encompass's claims administrators, assigned Duffy's application claim number 220933538.

34. Applying the Allstate Worksheet, Defendants paid approximately $82,000.00 in APIP wage benefits under the Duffy Policy, while claiming $17,100.00 in offsets, from the date of the accident through Defendants' claimed exhaustion of APIP benefits on or about November 10, 2025.

35. Thereafter, Defendants denied additional payments on the wrongful basis that Duffy's APIP coverage was exhausted.

36. When Defendants deemed Duffy's coverage under the Duffy Policy exhausted, he remained entitled to approximately $18,000.00 in additional first-party benefits under § 5102.

37. The Allstate Worksheet's unlawful methodology, and not any true exhaustion of coverage, prematurely cut off Duffy's APIP benefits under the Duffy Policy

38. In adjusting claims, including Plaintiff's, Defendants operated as a unified enterprise. Encompass and National General are a subsidiary of Allstate Insurance. All three Defendants share the same principal place of business and coordinate their claims-handling operations.

39. Adjusters employed by Allstate Insurance routinely perform wage-loss calculations for Encompass, National General, and the other Allstate Insurance subsidiaries.

Allstate Insurance adjusters applied the Allstate Worksheet to calculate first-party benefits for policyholders insured under policies issued Allstate Insurance subsidiaries.

## CLASS ALLEGATIONS

40. Plaintiff brings this action individually and as a class action on behalf of himself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41. Plaintiff seeks to represent a class defined as follows:

> All persons who (a) were insured or covered under an automobile insurance policy issued or administered by any Defendant in the State of New York; (b) submitted a claim for lost-wage benefits under Insurance Law § 5102; (c) earned more than $2,000 per month at the time of their accident; and (d) had their claims adjusted using the Allstate Worksheet or a substantially similar methodology that credited their gross, pre-offset wage figure against their benefits limit(s) (the "Class"). Excluded from the Class are (a) the Defendants and their officers, directors, employees, agents, and affiliates; (b) any judicial officer presiding over this action; and (c) any person who timely and validly requests exclusion from the Class.

42. The Proposed Class Period runs from six years before the filing of this Complaint through the present.

43. *Numerosity*: The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of policyholders and covered persons across the State of New York whose wage-loss claims were adjusted using Defendants' standardized Allstate Worksheet methodology over a period of years. The precise number and identities of Class members are ascertainable from Defendants' records.

44. *Commonality and Predominance*: Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

a. Whether Defendants' methodology for calculating benefits and coverage violates Insurance Law § 5102;

b. Whether Defendants' use of the Allstate Worksheet to adjust wage-loss claims constitutes a systematic and uniform practice;

c. Whether Defendants breached their insurance contracts with Class members by prematurely exhausting their no-fault coverage;

d. Whether Defendants engaged in unfair claim settlement practices;

e. Whether Class members are entitled to declaratory and injunctive relief;

f. Whether Class members are entitled to monetary damages, and if so, the appropriate measure of such damages; and

g. Whether Class members are entitled to pre-judgment and post-judgment interest.

45. *Typicality*: Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all Class members were injured by the same wrongful conduct—Defendants' systematic use of the Allstate Worksheet to improperly credit gross wage amounts against policy limits, resulting in premature exhaustion of coverage. Plaintiff's claims arise from the same course of conduct that gives rise to the claims of the other Class members, and Plaintiff's legal theories are based on the same legal theories as those of the other Class members.

46. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to or in conflict with those of the Class. Plaintiff has retained counsel experienced in prosecuting complex class action litigation, including insurance and no-fault cases, who will adequately represent the interests of the Class.

47. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is relatively small compared to the complexity of the litigation, and because of

Defendants' financial resources, few, if any, Class members could afford to seek legal redress individually for the wrongs alleged herein. Absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

48. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the resources of the parties, and protects the rights of each Class member.

49. Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
**(Violations of the No-Fault Statute)**

50. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

51. By virtue of their improper methodology for calculating first-party benefits, as discussed herein, Defendants have failed to pay Plaintiff and Class members the full amount of benefits to which they are entitled under Insurance Law § 5102.

52. Insurance Law § 5102 mandates that insurers provide "first-party benefits" to reimburse covered persons for "basic economic loss," which includes up to $50,000 in coverage for medical expenses and lost wages. For lost wages, the statute caps monthly benefits at $2,000, reduced by a 20% offset under § 5102(b)(1).

53. Under the No-Fault Statute, an insurer may not credit against an insured's $50,000 basic economic loss limit more than the $2,000 per month statutory cap on the lost-

earnings component of basic economic loss set forth in Insurance Law § 5102(a)(2).

54. The New York Court of Appeals held in *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451 (1980), that the $2,000 statutory cap "represents the outer limit of recovery set down by the Legislature." *Id.* at 458. The Court explicitly ruled that "the 20% deduction should not be treated as taking away what [§ 5102(a)] bestows." *Id.* at 457. An insurer may not charge more than $2,000 per month in lost wages against the $50,000 basic economic loss limit.

55. Defendants violated Insurance Law § 5102 by charging more than the $2,000 statutory cap against Plaintiff's and Class members' $50,000 basic economic loss limits. The No-Fault Statute does not permit Defendants to benefit twice: once by limiting wage benefits to $2,000 per month, and again by charging more than that amount against the policy limit. This practice caused premature coverage exhaustion before Plaintiff and Class members received the full $50,000 in first-party benefits to which they were entitled.

56. As a direct and proximate result of Defendants' violations of Insurance Law § 5102, Plaintiff and Class members have been damaged in amounts to be proven at trial, but which include, at minimum, the difference between (a) the $50,000 basic economic loss limit (plus any Optional Basic Economic Loss or Additional PIP coverage) and (b) the amount of first-party benefits actually paid before Defendants wrongfully deemed their coverage exhausted.

57. Plaintiff and Class members are entitled to recover from Defendants all unpaid first-party benefits, together with statutory interest at the rate of two percent per month as provided by Insurance Law § 5106(a), and reasonable attorney's fees as provided by § 5106(a).

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

58. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59. At all relevant times, valid and enforceable insurance contracts existed between Defendants and Plaintiff and Class members.

60. Under their respective insurance policies, Defendants agreed to pay first-party benefits to Plaintiff and Class members in accordance with Insurance Law § 5102 and the regulations promulgated thereunder, including up to $50,000 in basic economic loss coverage (plus any Optional Basic Economic Loss or Additional PIP coverage purchased by the insured).

61. The insurance policies issued and administered by Defendants incorporated the requirements of the No-Fault Statute, including the mandate that insurers pay first-party benefits until the coverage limits are exhausted. Under Insurance Law § 5102 and controlling precedent, coverage is not exhausted until the insurer has actually paid $50,000 in first-party benefits to or on behalf of the covered person.

62. Plaintiff and Class members performed all conditions precedent to Defendants' obligations under their respective insurance policies, including timely submitting claims for first-party benefits and providing all required documentation and verification.

63. Defendants breached their insurance contracts with Plaintiff and Class members by charging more than the $2,000 statutory cap against the $50,000 basic economic loss limit, prematurely exhausting coverage and denying further benefits while coverage remained available under the policies and the No-Fault Statute.

64. Alternatively, Allstate Insurance is directly liable for breach of contract because it developed, implemented, and directed the use of the Allstate Worksheet—the very methodology that caused Defendants to breach their contractual obligations to Plaintiff and Class members. Allstate Insurance's conduct had a determinative and coercive effect on Allstate Fire's claims-handling practices, causing the injuries alleged herein.

65. Allstate Insurance is also liable as a third-party tortfeasor whose wrongful conduct—developing and directing the use of the unlawful Allstate Worksheet—induced Allstate Fire to breach its contracts with Plaintiff and Class members. Allstate Insurance knew that its subsidiaries, including Allstate Fire, would apply the Allstate Worksheet to adjust claims under policies they issued, and that doing so would result in underpayment of first-party benefits in violation of Insurance Law § 5102.

66. As a direct and proximate result of Defendants' breaches of contract, Plaintiff and Class members have been damaged in amounts to be proven at trial, including the unpaid first-party benefits to which they were entitled under their insurance policies before Defendants wrongfully deemed their coverage exhausted.

67. Plaintiff and Class members are entitled to recover from Defendants all unpaid first-party benefits, together with prejudgment interest at the statutory rate.

**THIRD CAUSE OF ACTION**
**(Violations of General Business Law § 349)**

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. The statute is designed to protect consumers from deceptive business practices and applies to virtually all economic activity.

70. Defendants are engaged in the business of selling and administering automobile insurance policies in New York. Plaintiff and Class members are consumers and covered persons entitled to benefits under such policies.

71. Defendants engaged in deceptive acts and practices by systematically using the

Allstate Worksheet to calculate first-party benefits in a manner that violates Insurance Law § 5102. Specifically, Defendants deceived Plaintiff and Class members by representing that their coverage was "exhausted" when, in fact, coverage remained available under their policies and the No-Fault Statute.

72. Defendants' deceptive practices were consumer-oriented and had a broad impact on consumers at large. Defendants applied the same unlawful Allstate Worksheet methodology to all wage-loss claims submitted by policyholders and covered persons across New York, affecting thousands of consumers over a period of years.

73. Defendants' deceptive practices were misleading in a material way. By falsely representing that coverage was exhausted, Defendants induced Plaintiff and Class members to forgo claims for additional benefits to which they were legally entitled and caused them to bear out-of-pocket expenses that should have been covered by their no-fault insurance.

74. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Class members were injured in that they were denied first-party benefits to which they were entitled and suffered actual damages, including unpaid no-fault benefits and out-of-pocket expenses for medical care and lost wages.

75. Pursuant to General Business Law § 349(h), Plaintiff and Class members are entitled to recover their actual damages or fifty dollars, whichever is greater. Because Defendants' deceptive practices were willful and knowing, Plaintiff and Class members are also entitled to recover treble damages.

76. Plaintiff is also entitled to recover reasonable attorney's fees pursuant to General Business Law § 349(h).

## FOURTH CAUSE OF ACTION
## (Tortious Interference)

77. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78. Plaintiff and Class members have valid and binding contracts of insurance with Allstate Insurance's subsidiaries and affiliates, including, without limitation, Encompass and National General (the "Insurance Contracts").

79. Allstate Insurance had actual knowledge of the Insurance Contracts. Allstate Insurance developed and implemented the Allstate Worksheet for use in adjusting first-party benefit claims submitted by policyholders and covered persons insured under policies issued by its subsidiaries, including Encompass and National General, and knew that Plaintiff and Class members held such policies.

80. Allstate Insurance intentionally and without justification procured the breach of the Insurance Contracts by directing Encompass, National General, and its other subsidiaries to apply the Allstate Worksheet's unlawful methodology when adjusting wage-loss claims submitted by Plaintiff and Class members. Allstate Insurance knew that directing its subsidiaries to apply this methodology would cause them to credit wage amounts against the $50,000 basic economic loss limit beyond the $2,000 statutory cap, thereby prematurely exhausting coverage and depriving Plaintiff and Class members of first-party benefits to which they were contractually and statutorily entitled.

81. Allstate Insurance's interference was neither privileged nor justified by any legitimate business purpose.

82. As a direct and proximate result of Allstate Insurance's intentional and unjustified interference, Encompass, National General, and Allstate Insurance's other subsidiaries breached the Insurance Contracts by prematurely deeming Plaintiff's and Class members' coverage

exhausted and denying further first-party benefits while coverage remained available under the policies and the No-Fault Statute.

**83.** As a direct and proximate result of Allstate Insurance's tortious interference, Plaintiff and Class members have been damaged in amounts to be proven at trial, including, at minimum, the unpaid first-party benefits wrongfully withheld as a result of the breach of the Insurance Contracts, together with interest thereon.

**FIFTH CAUSE OF ACTION**
**(Declaratory and Injunctive Relief)**

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein

84. An actual and justiciable controversy exists between Plaintiff and Class members, on the one hand, and Defendants, on the other, concerning their respective rights and obligations under the insurance policies issued and administered by Defendants and under Insurance Law § 5102.

85. Specifically, Plaintiff and Class members contend that Insurance Law § 5102 requires Defendants to credit only the amount of first-party benefits actually paid against the $50,000 basic economic loss limit (and any additional coverage), whereas Defendants contend that they may credit more than the actual payment amount against such limits.

86. Plaintiff and Class members seek a declaratory judgment pursuant to CPLR 3001 declaring that:

a. Defendants' practice of crediting more than the actual payment amounts against the $50,000 basic economic loss limit violates Insurance Law § 5102;

b. Under Insurance Law § 5102, Defendants may only credit against the basic economic loss limit the amount of first-party benefits actually paid to or on behalf of the covered person;

c. Defendants breached their insurance contracts with Plaintiff and Class members by prematurely deeming their coverage exhausted; and

d. Plaintiff and Class members are entitled to recover all unpaid first-party benefits wrongfully withheld by Defendants.

87. Plaintiff and Class members further seek injunctive relief pursuant to CPLR 6301 enjoining Defendants from continuing to use the Allstate Worksheet or any substantially similar methodology that credits gross, pre-offset wage amounts against insureds' basic economic loss limits.

88. Unless Defendants are enjoined from continuing their unlawful practices, Plaintiff, Class members, and other New York consumers will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendants' ongoing violation of the No-Fault Statute causes continuous harm to policyholders and covered persons whose wage-loss claims are adjusted using the Allstate Worksheet.

89. The balance of equities favors Plaintiff and Class members. Defendants have no legitimate interest in continuing to use a methodology that violates the No-Fault Statute and deprives insureds of benefits to which they are legally entitled. In contrast, Plaintiff and Class members have a substantial interest in receiving the full benefits promised under their insurance policies and mandated by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully demands judgment against Defendants as follows:

A. An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B. A declaratory judgment declaring that Defendants' practice of crediting gross,

pre-offset wage amounts against the $50,000 basic economic loss limit (and any Optional Basic Economic Loss or Additional PIP coverage) violates Insurance Law § 5102 and constitutes a breach of Defendants' insurance contracts;

C. A declaratory judgment declaring that, under Insurance Law § 5102, Defendants may only credit against the basic economic loss limit the amount of first-party benefits actually paid to or on behalf of covered persons;

D. A permanent injunction enjoining Defendants from using the Allstate Worksheet or any substantially similar methodology that credits an amount greater than what was actually paid against insureds' basic economic loss limits;

E. An award of compensatory damages to Plaintiff and Class members in an amount to be determined at trial, including all unpaid first-party benefits wrongfully withheld by Defendants;

F. An award of statutory interest at the rate of two percent (2%) per month on all overdue first-party benefits pursuant to Insurance Law § 5106(a);

G. An award of statutory damages, including treble damages, pursuant to General Business Law § 349(h);

H. An award of prejudgment and post-judgment interest at the maximum rate permitted by law;

I. An award of reasonable attorney's fees and costs pursuant to Insurance Law § 5106(a), General Business Law § 349(h), and any other applicable statute or rule;

J. An award of costs and disbursements of this action; and

K. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: July 31, 2026

Respectfully submitted,

MARSCHHAUSEN & FITZPATRICK, P.C.

*s/ Kevin P. Fitzpatrick*
Kevin P. Fitzpatrick (SBN 2526564)
Dirk Marschhausen (SBN 2324465)
73 Heitz Place
Hicksville, NY 11801
(516) 747-8000
kfitzpatrick@marschfitz.com
dmarschhausen@marschfitz.com

Jeremy E. Abay (SBN 5700455)
POND LEHOCKY GIORDANO INC.
30 Washington Avenue, Suite D2
Haddonfield, NJ 08033
(856) 528-8115
jabay@pondlehocky.com

*Attorneys for Plaintiff and the Class*